IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

TIMOTHY JOE LARSON,

        Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

_____

Civ. No. 6:16-cv-00805-CL

ORDER

MARK D. CLARKE, Magistrate Judge.

        Plaintiff Timothy Joe Larson seeks judicial review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of the Social Security Administration denying his application for Disability Insurance Benefits and Supplemental Security Income pursuant to the Social Security Act. For the reasons below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

## BACKGROUND

        Plaintiff was born August 2, 1967, and is currently 49 years old. Tr. 562. Plaintiff is married; has a high school education; and previously worked as a truck driver, lock and dam operator, sheet metal mechanic, and deckhand. Tr. 84, 91-92.

        In February 2009, Plaintiff fell on ice while working as a truck driver and sustained lower-back injuries. Tr. 334, 490. An MRI conducted on September 26, 2009, demonstrated

Page 1 – ORDER

Plaintiff suffered from degenerative disc disease "with a moderate right disc extrusion at that level. This caused right lateral recess stenosis and impingement of the L5 nerve root." Tr. 334. Following the injury and diagnosis, Plaintiff initially responded positively to epidural steroid injections; however, "subsequent [epidural] shots [were] less rewarding." Tr. 448. Plaintiff also attempted physical therapy, as well as home exercise, TR 334, 342-43, but physical therapy reportedly aggravated Plaintiff's lower back and was eventually discontinued. Tr. 490.

Due to the ongoing and substantial back pain, on February 7, 2013, Plaintiff underwent a discectomy and arthroplasty; the surgical procedure replaced his L4 vertebral disc with a "large metal ball." Tr. 383-84, 490. Following surgery, Plaintiff reported decreased pain and that "the nerve pain that he had down the left leg" as a result of the lower-back injury "ha[d] been resolved." Tr. 440. Any reprieve from pain appears to have been temporary, however, and within two months of his surgery, he reported "constant symptoms over the low back region," "rate[d] at a maximum of 7/5/10. . . ." Tr. 477. He has since repeatedly complained of lower-back pain, significant pain in his right leg, and occasional pain in his left leg. Tr. 465.

Later in 2013, Plaintiff suffered a heart attack, which required the insertion of two stints in his heart.[1] Tr. 45, 562. In February of 2014, Plaintiff visited his cardiologist, Dr. Nitin Patel, M.D., complaining of the same pre-heart-attack conditions, such as "dyspnea on exertion, shortness of breath, fatigue, chest pressure and arm discomfort." Tr. 503. Dr. Patel diagnosed Plaintiff with congestive heart failure. Tr. 518.

Finally, on May 20, 2014, Joseph Stewart, MSW, EdD, performed a psychological assessment on Plaintiff pursuant to a request from Plaintiff's vocational rehabilitation counselor.

---

[1] There is conflicting evidence in the record as to how many heart attacks Plaintiff suffered, with some medical reports indicating he suffered two heart attacks. *See, e.g.*, Tr. 490. Given Plaintiff's testimony that he suffered "a heart attack," however, Tr. 45, the Court operates under the assumption that he suffered one heart attack in 2013.

Tr. 523. Dr. Stewart's conclusion was that Plaintiff's "attention and concentration" were "impaired" and that tests indicated he was "a person with significant depressive traits," as well as a person who "seem[ed] to be functioning with a distress syndrome which directly and negatively impact[ed] upon [his] ability to function adequately on a daily basis." Tr. 527.

Up until 2012, Plaintiff attempted to work sporadically, though, as he put it, "working today mean[t] bed rest tomorrow." Tr. 491. Plaintiff was terminated from his most recent job as a truck driver in January 2013. Tr. 432. He has not worked since. Tr. 490.

On January 29, 2013, Plaintiff filed an application for a period of disability and disability benefits, alleging disability beginning on November 15, 2012. Tr. 11. The claim was denied on May 15, 2013, and again on September 16, 2013. Tr. 11. Thereafter, Plaintiff filed a request for a hearing. Tr. 11. The hearing was held before an Administrative Law Judge ("ALJ") on September 10, 2014, and the ALJ issued a decision on November 13, 2014, finding Plaintiff was not disabled. Tr. 23. On March 8, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's denial the Commissioner's final decision. Tr. 1. This timely appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially

dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.     Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.     Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.     Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

   a.   The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.     Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).   If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the five-step analysis, the ALJ found:

1.  Plaintiff has not engaged in substantial gainful activity since November 15, 2012, the alleged onset date. (20 CFR § 404.1571 *et seq.*). Tr. 14.

2.  Plaintiff has the following severe medically determinable impairments: coronary artery disease, status post myocardial infarction, status post stenting, chronic obstructive pulmonary disease, lumbar degenerative disc disease, status post artificial disc replacement, and an affective disorder. (20 CFR § 404.1520(c)). Tr. 14.

Page 5 – ORDER

3. Plaintiff does not have an impairment or a combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1. (20 CFR §§ 404.1520(d), 404.1525 & 404.1526). Tr. 14.

   a. Plaintiff has the RFC to perform light work as defined in 20 CFR § 404.1567(b), except Plaintiff is limited to occasionally stooping, crouching, crawling, kneeling, and climbing ramps or stairs, and should never climb ladders, ropes, or scaffolds. He must also avoid concentrated exposure to pulmonary irritants, such as fumes, odors, dust, and gases, as well as poorly ventilated areas. Plaintiff must further avoid concentrated exposure to dangerous machinery with moving mechanical parts and unprotected heights that are high or exposed. Finally, he is limited to performing only simple, routine, and repetitive tasks with occasional interaction with the public, co-workers, and supervisors, but he can work in the vicinity of others. Tr. 16.

4. Plaintiff is unable to perform any past relevant work. (20 CFR § 404.1565). Tr. 22.

5. After considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that he can perform. (20 CFR §§ 404.1569 and 404.1569(a)). Those jobs include parking lost cashier and document preparer. Tr. 22-23.

Consequently, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. Tr. 23.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r. Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence'" means "'more than a mere scintilla but less than a preponderance,'" or more clearly stated, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court

must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

/ / /

/ / /

## DISCUSSION

Plaintiff argues the ALJ erred by (1) improperly rejecting Plaintiff's own subjective testimony; (2) improperly rejecting the medical opinions of Drs. Terry Bagley, Derrick Woodward, and Joseph Stewart; and (3) improperly discounting the consultative vocational expert's opinion.

## SUMMARY

In determining Plaintiff's RFC, the ALJ held that the medical evidence found in the record could not reasonably be expected to cause the extent of his alleged symptoms. Tr. 21. Specifically, the ALJ found Plaintiff's "subjective" statements alongside inconsistent and unsupported statements, as well as symptom exaggeration, "significantly detract[ed] from the credibility of his allegations." Tr. 21. As discussed below, this was in error. Additionally, in determining the RFC, the ALJ erred by attaching little weight to the medical opinions of Drs. Bagley, Woodward, and Stewart, and by improperly rejecting the consultative vocational expert's opinion. Tr. 17-21. The ALJ's decision is therefore vacated, and the case is remanded for further proceedings.

**I.      The ALJ failed to provide clear and convincing reasons, supported by specific evidence, to discount Plaintiff's subjective statements regarding the intensity, persistence, and limiting effects of his physical and mental symptoms when determining Plaintiff's RFC.**

As stated, the ALJ determined there was insufficient medical evidence in the record to support Plaintiff's subjective statements about his physical and mental health. Tr. 17-18, 21. For the reasons below, the Court finds the ALJ's determination to be erroneous.

When, as here, a plaintiff has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the [plaintiff's] testimony about the

Page 8 – ORDER

severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the [plaintiff's] testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

In this case, the ALJ determined Plaintiff's "allegations [were] not fully credible." Tr. 21. The ALJ based this finding on a number of factors, including her view that Plaintiff had not "looked for work or tried part time work"; Plaintiff appeared focused on procuring disability or worker's compensation; and that evidence suggested symptom exaggeration. Tr. 21. With respect to symptom exaggeration, the ALJ pointed to Plaintiff's subjective statement that he uses oxygen on a daily basis due to shortness of breath. Tr. 17. The ALJ believed this testimony was inconsistent with the treatment record. Tr. 17-18. Additionally, the ALJ found Plaintiff's testimony that he experiences such severe pain and fatigue that he is forced to "lay down 'all day' and nap for 1-3 hours per day" to be uncorroborated by evidence in the record. Tr. 18. Finally, the ALJ held that Plaintiff's testimony that he has difficulty concentrating and could only pay attention for periods of five to ten minutes to be in contravention with the medical record, which indicated a "normal attention span. . . ." Tr. 21.

First, the Court finds nothing in the record to indicate Plaintiff was focused entirely on obtaining benefits and failed to look for work or did not want to work. To the contrary, the record indicates Plaintiff attempted to return to work following his 2009 work-related accident despite experiencing recurring lower-back pain. Indeed, Plaintiff worked on and off until he was

terminated from his job. Moreover, the record contains statements noting Plaintiff's desire to return to work; for instance, as Dr. Derrick Woodward, M.D., stated on October 28, 2012, "things [today] may be a little better than yesterday but still really cannot move around very well and certainly could not get back to work, which he wants to do." Tr. 412. By contrast, the Court finds nothing in the record suggesting he did not want to work.

Next, the record does not indicate symptom exaggeration. Plaintiff testified that he experiences recurring shortness of breath and chest pain on a regular basis. Tr. 37. He stated that he uses oxygen "pretty must daily" to help combat these issues. Tr. 37. With regards to his back, Plaintiff said he experiences back pain "[c]onstantly," and that without medication, his pain level would be around a seven to eight on a scale of one to ten. Tr. 44. Despite the allegedly constant pain, Plaintiff does attempt to do "[s]mall household duties," including preparing his breakfast, laundry, and dishes, but he states that he cannot engage in such physical activity for more than twenty to thirty minutes before the back pain becomes too intense. Tr. 48. The rest of Plaintiff's day, he testified, is largely spent watching television or lying in bed; he does not typically sit down in chairs because "[l]aying down is [his] most comfortable position." Tr. 48, 51. Finally, Plaintiff testified that he attempts to go on daily walks, which includes "short walks with [his] dogs," Tr. 41, though they do not typically last for long because walking aggravates his sciatic nerve pain. Tr. 38.

The medical record evidence tends to corroborate Plaintiff's testimony. According to the medical records, Plaintiff reported "constant symptoms over the low back region," and much like he did in his testimony before the ALJ, rated his pain "at a maximum of 7/5/10. . . ." Tr. 477. Similarly, Plaintiff's cardiologist, Dr. Patel, whose report the ALJ assigned great weight, reported, in February 2014, that Plaintiff was experiencing "dyspnea on exertion, shortness of

breath, fatigue, chest pressure and arm discomfort," Tr. 503, corroborating Plaintiff's testimony that he routinely experiences shortness of breath and chest pressure. Accordingly, Plaintiff's testimony was not exaggerated but appears to be entirely in line with the medical record evidence.

In fact, when the Court looks specifically at statements that, as the ALJ put it, "remain[] uncorroborated by any credible evidence," Tr. 17, the Court finds sufficient, and oftentimes recurring, evidence that, at the very least, should be worthy of consideration by the ALJ. The ALJ stated Plaintiff testified "he uses oxygen daily for shortness of breath" and experiences pain and fatigue "of such severity that he has to lay down 'all day' and nap for 1-3 hours per day." Tr. 17-18. The ALJ herself acknowledged during Plaintiff's testimony that he uses and is prescribed oxygen, but, as she said, "the record show[ed] [Plaintiff's] oxygen [was] prescribed for use at night." Tr. 37. Plaintiff acknowledged this, but stated that he nonetheless uses oxygen both at night and also during the day to combat his chest pains and shortness of breath whenever they occur. Tr. 38. Given the detailed evidence depicting Plaintiff's recurring and "episodic[]" shortness of breath, chest pain, as well as a diagnosis of chronic obstructive pulmonary disease, a heart attack, and a lung nodule, *see*, *e.g.*, Tr. 504, 546, 548, 550-51, 562, the Court does not find Plaintiff's statement that he uses oxygen during the day and night to combat shortness of breath to be uncorroborated, worthy of entirely discrediting, evidence of symptom exaggeration, or a reason to discount the entirety of Plaintiff's testimony.

The same can be said for Plaintiff's statement that he experiences pain and fatigue to such a degree that he is limited to lying in bed for most of the day. In June 2014, for example, Dr. Stewart, a psychologist, noted that Plaintiff reported spending most days lying in bed watching television. Tr. 524. Likewise, Dr. Patel noted Plaintiff reported "the same pre-heart

attack symptoms," including fatigue, were recurring on a daily basis in August 2014. Tr. 503.

Finally, Larry Kravitz, Psy.D., a state consultant, noted in his findings of fact that the medical

record indicated Plaintiff was "unable to get quality sleep due to pain," is "in constant pain," and

thus cannot "walk for 15 minutes before needing to rest." Tr. 84. And while the Commissioner

can point to findings that Plaintiff's post-surgical alignment was good or that Plaintiff had very

good range of motion, Tr. 454, 462, 475, this does not detract from the consistent evidence,

spanning multiple years, and contained throughout the record that Plaintiff suffered from severe,

debilitating back pain both before and after surgery that affected his ability to be physically

active throughout the day. *See, e.g.*, Tr. 361, 373, 384, 386-87, 477, 483. Hence, the record

points to an individual—Plaintiff—who, despite findings of post-surgical alignment and good

range of motion, does experience severe pain and fatigue, which limits him to a mostly sedentary

lifestyle. In sum, then, the Court does not find the ALJ's decision to discount Plaintiff's

testimony about his physical health to be supported by substantial evidence.

Similarly, the Court finds insufficient evidence to support the ALJ's decision to discount

Plaintiff's statements about his mental health. According to the ALJ, Plaintiff's "allegations that

he has disabling mental limitations are not supported by the longitudinal treatment record." Tr.

19. The ALJ found particularly unconvincing Plaintiff's assertion that his ability to concentrate is

negatively affected by his health issues and "he can only pay attention for five to ten minutes" at

a time. Tr. 21. The ALJ states this statement is in direct conflict with the record, which showed

"a normal attention span. . . ." Tr. 21.

Contrary to the ALJ's finding, the record contains several determinations by multiple

physicians that Plaintiff has problems concentrating. First, Dr. Kravitz, the state consultant given

"great weight" by the ALJ, Tr. 20, determined Plaintiff's "pain and depression would cause some

Page 12 – ORDER

difficulties with concentration and persistence over extended periods of time, particularly with detailed or complex tasks." Tr. 89. Furthermore, Dr. Kravitz found Plaintiff's "primary limitations" to be, among other things, "concentration." Tr. 90. Dr. Stewart made a similar determination when he evaluated Plaintiff in June 2014, stating Plaintiff's "current intellectual measures are consistent with . . . persistent and untreated depression," which "impaired" his "attention and concentration." Tr. 527. Hence, in contrast to the ALJ's finding, Plaintiff's assertion that he has difficulty concentrating *is* supported by the longitudinal treatment record.[2]

The ALJ cites to Plaintiff's ability to drive for an hour at a time and to concentrate throughout the entire duration of his hearing as evidence contradicting his self-reported inability to concentrate. Tr. 21. Compared with the substantial medical evidence in the record indicating an impaired ability to concentrate, however, the Court believes that this evidence, which is largely anecdotal, fails to meet the "substantial evidence" standard required for the Court to conclude that the ALJ properly discounted Plaintiff's testimony about his mental health.

### a. Summary

For the above-mentioned reasons, the ALJ's reasoning and the evidence she relied upon to discount Plaintiff is not clear and convincing.

## II. The ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, to discount Drs. Terry Bagley's, Derrick Woodward's, and Joseph Stewart's medical opinions.

The ALJ found Drs. Bagley, Woodward, and Stewart provided medical opinions that were not supported by the evidence in the record. Tr. 18-20. An ALJ may properly reject a treating or examining physician's uncontradicted medical opinion only for "'clear and

---

[2]Dr. Patel noted Plaintiff's concentration and attention span were normal, Tr. 506, but the Court notes Dr. Patel is a cardiologist; thus, the Court does not believe his assessment, during what was a routine physical, constitutes sufficient evidence to discount the findings of Dr. Stewart, a psychologist. *See* 20 C.F.R. § 404.1527(c)(5) (stating that more weight is generally given to the opinion of specialist about issued related to their area of specialty).

convincing' reasons." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). When the treating or examining physician's opinion has been contradicted, however, it may be rejected for '"specific and legitimate reasons that are supported by substantial evidence in the record."' *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting *Lester*, 81 F.3d at 830-31). This can be done by setting out a detailed and thorough summary of the facts, providing an appropriate interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). For the reasons set forth below, the Court finds the ALJ's rejection of the opinions of Drs. Bagley, Woodward, and Stewart to be erroneous.

## A. Dr. Bagley

### 1. Progress Report

Dr. Terry Bagley, M.D., one of Plaintiff's treating physicians, noted in a progress report on April 23, 2014, that Plaintiff was likely capable of doing light-duty, part-time work, so long as he did not frequently lift greater than twenty pounds or ten pounds constantly, sit for periods longer than an hour, frequently bend or twist his body, and so long as he was given hourly stretch breaks lasting approximately ten minutes. Tr. 489. The ALJ afforded "only limited weight to this opinion because it [was] not fully consistent with the evidence." Tr. 18. Specifically, the ALJ found it was "inconsistent with a recent treatment report showing . . . normal posture and gait, normal reflexes and coordination, and normal muscle strength, and tone." Tr. 18.

The recent treatment report came from Dr. Patel, Plaintiff's cardiologist, who provided an expertise not in musculoskeletal impairment but in cardiology. Dr. Patel noted Plaintiff had a

"normal posture and gait," "normal reflexes, coordination, muscle strength and tone." Tr. 506. Dr. Patel did not opine on Plaintiff's ability to engage in activities such as lifting objects weighing more than twenty pounds or sitting for greater than an hour. State consultant Dr. Pat Chan, M.D., did, however, and noted, like Dr. Bagley, that Plaintiff could occasionally lift and carry upwards of twenty pounds and frequently carry upwards of ten pounds. Tr. 73. This opinion was later endorsed by state consultant William Bolz, M.D. Tr. 87-88. Notably, Dr. Chan found, unlike Dr. Patel, that Plaintiff's gait was slow. Tr. 73. The ALJ assigned Dr. Chan's and Dr. Bolz's opinions "significant weight." Tr. 19. Both Chan and Bolz did feel Plaintiff could sit or stand for a total of six hours in an eight-hour workday, Tr. 73, 88, but this is not inconsistent with Dr. Bagley's report; all Dr. Bagley states is that Plaintiff should not sit for more than one hour at a time. Finally, state consultant Dr. Kravitz, whose opinion the ALJ also assigned great weight, believed, like Dr. Bagley, that Plaintiff was best assessed for light-duty work. Tr. 92. Consequently, the ALJ's finding that Dr. Bagley's opinion is not supported by the record is sharply in contrast with the weight of the evidence in the record.

Finally, it should be noted that Dr. Bagley reviewed Plaintiff's MRI, EMG, and conducted a functional capacity evaluation. Tr. 483, 488. Dr. Patel's physical assessment of Plaintiff appears to have been much less detailed and was secondary to an assessment of Plaintiff's cardiovascular system. Tr. 506. Dr. Bagley, not Dr. Patel, was thus in a perfect position to provide "a detailed, longitudinal picture of" Plaintiff's physical limitations. 20 C.F.R. § 404.1527(c)(2). Hence, as stated, the ALJ's decision to assign little weight to Dr. Bagley's progress report was erroneous. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (stating that the degree of familiarity the physician has with the plaintiff's medical record is a factor that

should be considered by the ALJ when assessing the weight to be given to a physician's opinion).

### 2. Practitioner's Report

The ALJ gave "very little weight" to Dr. Bagley's June 24, 2014, practitioner's report, which found Plaintiff was unable to engage in substantial gainful employment; the ALJ stated this was an issue reserved to the Commissioner and that the assessment was inconsistent with the evidence, particularly Dr. Patel's physical examination. Tr. 18. Moreover, the ALJ found the statement was conclusory and failed to "provide specific work limitations." Tr. 18.

"Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (citing *Magallenes*, 881 F.2d at 751). On such an issue, "[t]he ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." *Magallenes*, 881 F.2d at 751.

Here, Dr. Bagley stated he did not believe Plaintiff could engage in substantial gainful employment because he was "unable to sit for long periods of time," which he defined as greater than one hour, and because his pain medication would affect his attention and cognition. Tr. 486-87. As stated, the ALJ discounted this view because it was conclusory, did not have supportive objective evidence, and failed to provide specific work limitations. The Court agrees.

First, the Court concurs with the ALJ's finding that Dr. Bagley's report was conclusory. Dr. Bagley's specific reasons for his finding that Plaintiff could not engage in gainful employment span two short sentences and cite an inability to sit for sustained periods of time and impaired cognition and inability to concentrate due to his pain medication as the genesis for Plaintiff's lack of capacity to engage in substantial gainful employment. Tr. 487. Dr. Bagley does

Page 16 – ORDER

not explain how such factors prevent Plaintiff from engaging in substantial gainful employment, and, importantly, run afoul of substantial, conflicting evidence in the record, including Dr. Bagley's own progress report issued in April of the same year. Indeed, there, as here, Dr. Bagley stated Plaintiff was precluded from sitting for sustained periods of time. Tr. 489. In contrast to this report, however, in his earlier progress report, Dr. Bagley stated that this physical impairment restricted Plaintiff to "full or part-time light duty work." Tr. 489. Dr. Bagley's conclusory practitioner's report does not explain what changed between April and July.

Moreover, Dr. Bagley's statement that Plaintiff's pain medications and resulting impaired cognition and concentration prevent him from engaging in substantial gainful employment is in direct conflict with Dr. Kravitz's finding that despite Plaintiff's impaired concentration and symptoms of depression, he is nonetheless capable of light-duty work. Tr. 90, 92. Thus, in sum, Dr. Bagley's two-sentence statement that Plaintiff is unable to engage in substantial gainful employment is brief, conclusory, and inadequately supported both by evidence in the record and by his own, earlier clinical findings. The ALJ therefore did no err in discrediting his practitioner's report.

### B. Dr. Woodward

In September 2012, Dr. Woodward, Plaintiff's treating physician from August 2012 to October 2013, Tr. 562, found Plaintiff was "not able to do the functions of his work" because of "continued back pain." Tr. 408-09. In a letter dated July 22, 2014, Dr. Woodward reaffirmed this position, stating Plaintiff could not "return to his previous line of employment as a truck driver." Tr. 562. Finally, he felt that due to Plaintiff's age, training, and work experience, Plaintiff would have difficulty finding substantial gainful employment. Tr. 562. The ALJ assigned Dr. Woodward's opinions "very little weight because they are inconsistent with the evidence,"

specifically with Dr. Patel's physical examination finding "normal posture and gait, normal reflexes and coordination, and normal muscle strength, and tone." Tr. 18.

The ALJ's rejection was erroneous. Dr. Woodward had an extensive medical relationship with Plaintiff and was thus in a perfect position to assess the combined effects of Plaintiff's medical and mental impairments. By contrast, the finding in Dr. Patel's physical examination that the ALJ relies on—that Plaintiff had normal posture and gait, normal reflexes and coordination, and normal muscle strength and tone—was not only contradicted in part by Dr. Chan, who noted Plaintiff's gait was slow, Tr. 73, but the physical examination report itself is replete of any detailed analysis; instead, it largely resembles a checklist, stating which symptoms Plaintiff did or did not exhibit at the time of his physical examination. "[T]he regulations give more weight to opinions that are explained than to those that are not. . . ." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). And while one could argue Dr. Woodward's July 22 letter, which spans only one page, also lacks detail, Dr. Woodward takes time to explain the reasons he believes prevent Plaintiff from returning to his previous line of employment, as well as the recent health issues that have plagued Plaintiff since August 2013 and his current age and work experience, among other factors, which combine, in his view, to detrimentally affect Plaintiff's ability to engage in his previous line of employment or find gainful employment of any kind.

This analysis is combined with additional medical reports supplied by Dr. Woodward that help piece together his assessment in the July 11 letter. *See* Tr. 409 (explaining Dr. Woodward's finding that Plaintiff was unable to engage in work-related functions); *see also* 414-15, 417 (imposing restrictions on Plaintiff's ability to return to work). All of this results in an analysis that is far more detailed than Dr. Patel's. Hence, as explained in *Holohan*, it should have been given more weight. *See also* 20 C.F.R. § 404.1527(c)(3) (stating that how well the source

Page 18 – ORDER

explains his opinion is a factor to consider in deciding the amount of weight to be given to a medical opinion).

Moreover, it should be noted, Dr. Woodward's findings are largely consistent with the ALJ's, who also found Plaintiff is unable to perform past relevant work. Thus, the Court fails to see how Dr. Woodward's medical reports, which are derived from a detailed and longitudinal picture of Plaintiff's physical and mental limitations between August 2012 and October 2013, Tr. 562, are inconsistent with the record. Given the great weight generally afforded to treating physicians such as Dr. Woodward, *see Tonapetyan v. Hatler*, 242 F.3d 1144, 1148 (9th Cir. 2001) (stating that treating physician's opinions are "generally afforded the greatest weight"), as well as the evidence supporting his findings, the Court finds that the ALJ's stated reasons for assigning his opinions little weight were neither specific nor legitimate, nor were they supported by substantial evidence in the record.

### C. Dr. Stewart

On May 20, 2014, Dr. Stewart, a licensed psychologist, performed a psychological evaluation on Plaintiff and provided a detailed, five-page written report on Plaintiff's mental health. Tr. 523-528. Dr. Stewart concluded Plaintiff's "attention and concentration [were] impaired" and that Plaintiff expressed characteristics "suggestive of a person with significant depressive traits." Tr. 527. Due to these mental health impairments, Dr. Stewart believed Plaintiff "[was] well-suited to be on Social Security benefits until such time that his depressive issues can be adequately addressed." Tr. 527. The ALJ "consider[ed] the opinion and afford[ed] it very little weight because it [was] inconsistent with other evidence," was based on Plaintiff's "subjective allegations of pain and not clinical or objective findings," and was inconsistent with Plaintiff's lack of mental health treatment. Tr. 20.

Page 19 – ORDER

Dr. Stewart's finding of depressive traits and impaired ability to concentrate are widely supported by the record. Specifically, Dr. Bagley stated, albeit in a conclusory fashion, that Plaintiff had impaired cognitive functioning and a diminished ability to concentrate. Tr. 487. Likewise, Dr. Kravitz determined Plaintiff's pain and depression caused difficulties with concentration. Tr. 89.

In addition, the ALJ's finding that Dr. Stewart's opinion was based on Plaintiff's "subjective allegations of pain and not clinical or objective findings" is not supported by substantial evidence. The Commissioner makes much of Plaintiff's "distressed presentation" during the psychological evaluation, believing this, combined with Plaintiff's subjective reporting, "significantly influenced" Dr. Stewart's report. Def.'s Brief, at 17. But as the record demonstrates, Dr. Stewart based his findings of Plaintiff's mental health not only by assessing Plaintiff's behavior and subjective reporting but also by administering or assessing the results of the Wecheler Adult Intelligence Scale, the Dender Visual Motor Gestalt Test, the Wide Range Achievement Test, the Minnesota Multiphasic Personality Inventory, the JOB-O Interest Survey, human figure drawings, and reviewing available medical records. Tr. 525. Dr. Stewart justified his findings by detailing the results of these tests. Tr. 526-27. Accordingly, Dr. Stewart's psychological evaluation was based on a great deal of objective testing, and the ALJ's stated finding that Dr. Stewart's opinion was based on Plaintiff's subjective reporting and not on clinical or objective findings is at odds with the record.

Finally, Plaintiff's lack of mental health treatment was insufficient evidence to discount Dr. Stewart's report. In making the claim that the ALJ may rely on Plaintiff's lack of mental health treatment to discount Dr. Stewart's finding, the Commissioner cites to *Molina*. There, the Ninth Circuit stated, "[w]e have long held that, in assessing *a claimant's* credibility, the ALJ

may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)) (emphasis added). Furthermore, the court said:

> According to agency rules, "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96–7p. Moreover, a claimant's failure to assert a good reason for not seeking treatment, "or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

*Id.* at 1113-14.

Here, the ALJ was not assessing Plaintiff's credibility, but instead, the credibility of Dr. Stewart's psychological report. The Court thus finds the Commissioner's reliance on *Molina* misplaced. This is especially so given the weight of medical evidence indicating Plaintiff had attention and concentration issues, as well as symptoms of depression. Indeed, here, as discussed, this was not one psychologist's finding, but rather, the conclusion of three separate physicians. *See* Tr. 89, 487, 527. Hence, based on the foregoing reasons, the ALJ's stated reasons for discounting Dr. Stewart's report are not supported by substantial evidence.

## III.    The ALJ improperly rejected the vocational expert's opinion.

Joseph L. Burridge, a certified vocational expert, evaluated Plaintiff in April 2014 to assess Plaintiff's capacity to sustain gainful employment. Tr. 20, 490-501. Mr. Burridge performed a number of standardized tests on Plaintiff to assess various work-related skills, including mathematical abilities, perceptual speed and accuracy, dexterity skills, language usage, word knowledge, verbal reasoning, and mechanical reasoning. Tr. 492-94. Mr. Burridge concluded Plaintiff "demonstrated limited abilities" and "[b]ased on the results of [the]

evaluation and review of referral information received, [Plaintiff] would require work environments that are physically accommodating." Tr. 496-97. He further concluded that Plaintiff's ability to maintain gainful employment was "impaired" and that "physical challenges, problems with concentration and difficulty controlling [] emotions are certainly liabilities to maintaining gainful employment. . . ." Tr. 497. The ALJ afforded Mr. Burridge's opinion "very little weight because . . . it [was] inconsistent with the other evidence," including Plaintiff's "lack of mental health treatment or counseling[,] with Dr. Stewart's report that [Plaintiff] was pleasant and cooperative with no indications of psychosis or a thought disorder," and "because Mr. Burridge fail[ed] to provide specific work limitations and the opinion impedes on an issue specifically reserved to the Commissioner." Tr. 20.

Neither party disputes that vocational evaluation specialists, like Mr. Burridge, are defined as "other sources." 20 C.F.R. § 404.15.13(d). Because Mr. Burridge is defined under the umbrella term "other sources," the ALJ was entitled to discount his testimony if she provided germane reasons for doing so. *Molina*, 674 F.3d at 1111 (internal quotations and citations omitted).

The ALJ failed to give germane reasons for discounting Mr. Burridge's opinions. The ALJ's first stated reason for rejecting Mr. Burridge's opinion was that it was inconsistent with the medical record. As the Commissioner correctly points out, inconsistency with the medical record is a germane reason for rejecting an opinion from "other sources." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Here, however, Mr. Burridge's opinion that Plaintiff expressed an impaired ability to concentrate, difficulty controlling emotions, and depressive tendencies was in line with the medical record. Both Drs. Stewart and Kravitz concluded Plaintiff's attention and concentration were impaired and that Plaintiff expressed depressive

characteristics Tr. 527, 89. In discounting Mr. Burridge's report, the ALJ makes much of Dr. Stewart's conclusion that Plaintiff "was pleasant and cooperative with no indications of psychosis or a thought disorder." Tr. 20.  Mr. Burridge also stated Plaintiff "presented himself as a cooperative individual who put forth a good effort," Tr. 496, but, like Dr. Stewart, arrived at the conclusion that Plaintiff suffered from an impaired ability to concentrate and depressive tendencies. Mr. Burridge's assessment was thus consistent with the medical record.

The ALJ's second reason for rejecting Mr. Burridge's report was that Mr. Burridge failed to provide specific work limitations and his opinion impeded on an issue specifically reserved to the Commissioner. Tr. 20. First, Mr. Burridge did provide specific work limitations; he stated Plaintiff's physical challenges, concentration problems, and difficulties controlling emotions are specific "liabilities to maintaining gainful employment. . . ." Tr. 497. Moreover, he noted Plaintiff scored below average for dexterity, coordination, perceptual speed and accuracy, bimanual dexterity, and fine eye-hand coordination, among other physical and mental traits, all of which, Mr. Burridge explained, are variables that should be taken into account is assessing the limitations of Plaintiff's potential employment opportunities. Tr. 494. To say that Mr. Burridge failed to provide specific work limitations is to ignore pages worth of data analyzing Plaintiff's work-related physical and mental traits. *See* Tr. 490-501.

Last, that Mr. Burridge's report impeded on an issue reserved for the Commissioner is not, by itself, a reason to discount its findings. The ALJ may not discount Mr. Burridge's report simply by stating that it impeded on an area reserved for the Commissioner. While the ultimate issue of disability is, of course, a determination reserved to the Commissioner, and in making that determination, the ALJ is not bound by the opinions of "other sources," 20 C.F.R. §§ 404.1527(d)(1), (3), she may not discount those opinions without presenting germane reasons for

doing so; indeed, without more, conclusively stating that a report impeded on an issue reserved for the Commissioner is not enough. *Molina*, 674 F.3d at 1111. Accordingly, this conclusory reason is also insufficient to discount Mr. Burridge's report. Thus, because the ALJ failed to provide any germane reasons for rejecting Mr. Burridge's report, she erred in doing so.

## REMAND

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). Generally, when a court reverses an administrative decision, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002)). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989); *Smolen*, 80 F.3d at 1292.

In some circumstances, where the ALJ has improperly credited testimony or failed to consider it, the Ninth Circuit has credited the rejected testimony. *See Smolen*, 80 F.3d at 1292; *see also Lester*, 81 F.3d at 834. However, in *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003), the Ninth Circuit determined that the "'crediting as true' doctrine" is not mandatory and the court has some flexibility in applying the doctrine.

On this record, the Court believes it would be useful to remand to the ALJ so that she may consider Plaintiff's own subjective testimony; the medical opinions of Drs. Terry Bagley, Derrick Woodward, and Joseph Stewart; and Mr. Burridge's report, as these opinions may affect a determination as to whether or not Plaintiff is disabled. The Court thus exercises its discretion and remands for further proceedings. *See id.*

## ORDER

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and the matter is REMANDED for further administrative proceedings. Upon remand, the ALJ should:

(1) Reassess Plaintiff's credibility. Should the ALJ determine her to not be credible, the ALJ shall provide clear and convincing reasons for doing so.

(2) Reassess the medical opinions of Drs. Terry Bagley, Derrick Woodward, and Joseph Stewart; however, the ALJ need not reassess Dr. Bagley's practitioner's report because the ALJ's rejection of that report was supported by substantial evidence. After reassessing this evidence, should the ALJ decide to reject Drs. Terry Bagley's, Derrick Woodward's, or Joseph Stewart's opinions, he or she must provide specific and legitimate reasons for doing so.

(3) Reassess Mr. Burridge's report. After reassessing this evidence, should the ALJ decide to reject Mr. Burridge's report, he or she must provide specific and legitimate reasons for doing so.

IT IS SO ORDERED.

DATED this ____ day of March, 2017.

MARK D. CLARKE
United States Magistrate Judge